UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff/Counter Defendant, | ) ) | |
| v. | ) ) | No. 4:25-cv-00858-CMS |
| BUDROVICH INDOOR TRAINING I, LLC, | ) ) ) ) | |
| Defendant/Counter Plaintiff. | ) | |

### OPINION, MEMORDANDUM, AND ORDER

This matter is before the Court on dueling motions for summary judgment. (Doc. 49) (Defendant's Motion for Summary Judgment); (Doc. 55) (Plaintiff's Motion for Summary Judgment).  The Court **GRANTS** Plaintiff West Bend Mutual Insurance Company's Motion for Summary Judgment on all counts and **DENIES** Defendant Budrovich Indoor Training I, LLC's, Motion for Summary Judgment on all counts.

### BACKGROUND

*Plaintiff's Complaint*

Defendant Budrovich conducts a business in which it leases to tenants a facility located at 9711 and 9719 Green Park Industrial Park Drive. (Doc. 1 at 3). In September 2020, Budrovich began leasing part of its facility to St. Louis Crossfire Elite Volleyball Club, a company that hosts volleyball tournaments. *Id.* In September 2023, A.N., a minor, and her mother sued Budrovich in Missouri state court for Negligence and Loss of

1

Consortium. Their Petition alleges that A.N. was injured from contacting a "dangerous and defective condition," an unmarked chain across a driveway, caused by Budrovich. *Id.* at 3-4.

Pursuant to Budrovich's lease with Crossfire, Crossfire took out an insurance policy with Plaintiff West Bend Mutual Insurance Company. (Doc. 1 at 5, 9). West Bend's insurance policy naming Crossfire as the insured also included Budrovich as an "additional insured." *Id.* at 9.

West Bend filed its Complaint in this Court on June 12, 2025, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). (Doc. 1 at 9-10). Specifically, West Bend seeks a declaratory judgment that it has neither a duty to defend nor a duty to indemnify Budrovich in the underlying Missouri state court suit with respect to the insurance policy it issued to Crossfire. *Id.* Budrovich filed a counterclaim against West Bend seeking a declaratory judgment that West Bend has a duty to defend it. (Doc. 18).

*Plaintiff's and Defendant's Motions for Summary Judgment*

Both Defendant Budrovich and Plaintiff West Bend move for summary judgment. (Docs. 49 and 55). Defendant Budrovich argues that summary judgment is proper because Crossfire's indemnity and defense obligations under the lease qualify as an "insured contract" under West Bend's policy, and West Bend was aware, or could have been aware by reasonable investigation, that the alleged injury occurred from Crossfire's use and ownership of, or ongoing operations at, the premises where A.N. was injured. (Doc. 49 at 2).

2

Plaintiff West Bend argues for summary judgment in its favor because the underlying lawsuit does not allege any negligence on the part of Crossfire. Also, West Bend points out that the lease does not require West Bend to defend or indemnify Budrovich. Finally, West Bend argues the undisputed facts demonstrate that A.N.'s injuries were not caused by Crossfire's ongoing operations at the location designated in the written contract, nor were they caused by the premises owned or used by Crossfire. (Doc. 55 at 2-4).

Along with its Motion for Summary Judgment, Budrovich filed a Memorandum of Law and Statement of Material Facts. (Docs. 50, 51). West Bend filed a Response to Budrovich's Statement of Material Facts (Doc. 60). West Bend also filed a Memorandum of Law and its own Statement of Material Facts along with its Motion for Summary Judgment. (Docs. 56, 57). Budrovich filed a Response to West Bend's Statement of Material Facts. (Doc. 66).

<em>The Uncontroverted Material Facts</em>[1]

Beginning in September 2020, Budrovich entered a lease agreement ("the Lease") with Crossfire, which was later renewed so that it was still in effect until August 2024. (Doc. 66 at 5). The Lease required Crossfire to acquire insurance and to name Budrovich as an "additional insured." (Doc. 60 at 1-2). Crossfire then acquired an insurance policy ("the Policy") from West Bend, which provided coverage for cases of "bodily injury" caused by an "occurrence." *Id.* at 4.

---

[1] This section sets out only the uncontroverted facts that may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3

In September 2023, A.N., a minor, and her mother filed a lawsuit in St. Louis County Circuit Court. (Doc. 66 at 9). They alleged that A.N. participated in a volleyball tournament on Budrovich's property in April 2023, and that she was injured by an unmarked chain barrier strung across a driveway in the parking lot. *Id.* They further alleged that Budrovich negligently caused A.N.'s injury. *Id.*

As a result of the lawsuit, Budrovich tendered the defense of the underlying lawsuit to West Bend without any reservation, which West Bend rejected. (Doc. 60 at 7-8). West Bend then agreed to defend Budrovich in October 2024 under a full reservation of rights. *Id.* at 8. Later, in April 2025, West Bend informed Budrovich that it had investigated the case, concluded that it had no duty to defend or indemnify Budrovich, and demanded that Budrovich's counsel and insurer take over the defense and indemnification of the underlying suit. *Id.* at 8-9. West Bend then brought the instant suit seeking a declaratory judgment determining its rights under the contract. (Doc. 1).

## DISCUSSION

### *Legal Standards*

Federal Rule of Civil Procedure 56(a) requires courts to grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant initially bears the burden "of informing the district court of the basis for [his] motion and [] identify[ing] the portions of the record that [he] believes demonstrate the absence of a genuine dispute of material fact." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). This burden can be satisfied in two ways: "[the movant] can [either] produce evidence negating an essential

4

element of the nonmoving party's case, or [he] can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Id.* If the movant meets his burden, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). The nonmovant cannot "substantiate his allegations with . . . mere speculation, conjecture, or fantasy," *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011), but "must instead present enough evidence that a jury could reasonably find in his favor," *Bedford*, 880 F.3d at 997.

If there are disputed facts, the Court "view[s] [those] facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in [his] favor. *Sherr v. HealthEast Care Sys.*, 999 F.3d 589, 597 (8th Cir. 2021). At summary judgment, the Court "'does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue' but focuses on whether there are genuine disputes of material fact for trial." *Walz v. Randall*, 2 F.4th 1091, 1099 (8th Cir. 2021) (citation omitted). "Substantive law in the relevant area dictates which facts are material, as 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Sherr*, 999 F.3d at 597 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Missouri law governs this dispute. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Acad. Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 776 (8th Cir. 2024). The Court is required to apply governing precedent of the Missouri Supreme Court while treating decisions of the Missouri Court of Appeals as persuasive authority. *Acad. Bank, N.A.*, 116 F.4th at 776. When Missouri Court of Appeals decisions are the best evidence of what state law is, the Court must follow them, but the Court is not required to follow them "'if . . . convinced by other persuasive data that the Missouri Supreme Court would decide otherwise.'" *Id.*

The interpretation of an insurance policy is a question of law. *Owners Ins. Co. v. Craig,* 514 S.W.3d 614, 616 (Mo. 2017) (en banc) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc)). "When interpreting an insurance policy, [a court] gives the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance." *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. 2019) (en banc) (quoting *Doe Run Res. Corp. v. Am. Guar. & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. 2017) (en banc)).

"Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies." *Piatt v. Ind. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. 2015) (en banc) (quoting *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007) (en banc)). When a word or phrase is undefined, the ordinary meaning of a term or phrase is determined from the dictionary. *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.3d 506, 508 (Mo. 1999) (en banc) (quoting *Farmland Industries, Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. 1997) (en banc)).

6

"When policy language is clear and unambiguous, the policy must be enforced as written," and the canons of construction are unnecessary. *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. 2015) (en banc) (citing *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 554 (Mo. 2014) (en banc)). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Seaton*, 574 S.W.3d at 247 (quoting *Taylor*, 457 S.W.3d at 344). "Ambiguities in the meaning of an insurance policy are resolved in favor of the insured, and exclusionary clauses are strictly construed against the drafter." *Mendenhall v. Prop. And Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. 2012) (en banc).

*Analysis*

Plaintiff West Bend seeks a declaratory judgment that, pursuant to the Policy, it has no duty to: (1) indemnify Defendant Budrovich for any damages awarded in the underlying case, or (2) defend Budrovich in the underlying case. (Doc. 1 at 9-10). The Court will consider each issue *seriatim*.

**I.      West Bend has No Duty to Indemnify Budrovich.**

West Bend argues it has no duty to indemnify Budrovich as to the claims in the underlying lawsuit. (Doc. 55 at 4). Under Missouri law, an insurer has both a duty to indemnify and a duty to defend. *McCrackin v. Mullen*, 701 S.W.3d 868, 874 (Mo. 2024) (en banc). These duties are distinct. *Id.* An insurer's duty to indemnify is narrower than its duty to defend and "is simply the insurer's obligation to pay for the insured's actual liability if it is covered by the policy." *Piatt*, 461 S.W.3d at 792.

7

Here, the only question regarding West Bend's duty to indemnify is whether Budrovich is covered by the Policy as an additional insured for purposes of the underlying lawsuit. Under Section II of the Policy, titled "Who is an Insured," paragraph 3 states, "Any additional insured under any policy of 'underlying insurance' will automatically be an insured under this insurance." (Doc. 50, Ex. 4 at 73-74). An endorsement was attached to the Policy further defining an "additional insured" under the Policy. (Doc. 50, Ex. 4 at 53).

Specifically, the endorsement limits the insurance coverage of the additional insured in several ways. The first limitation is that Budrovich "is only an additional insured with respect to liability for 'bodily injury,'" and other discrete claims. (Doc. 50, Ex. 4 at 53). The second is that the bodily injury must have been "caused in whole or in part by" one of two conditions: either "**a.** your [Crossfire's] ongoing operations performed for the insured at the location designated in the written contract; or **b.** premises owned or used by you [Crossfire]." *Id.* (emphasis in original). The third limitation is that the additional insured coverage applies only "to the extent permitted by law" and may not be "broader than that which you [Crossfire] are required by the contract or agreement to provide for such additional insured." *Id.* Fourth, the Policy states, "Additional insured coverage provided by this insurance will not be broader than coverage provided by the 'underlying insurance'." *Id.* at 74.

Neither party disputes that the underlying claim seeks liability for bodily injury. (Docs. 51 at 5, 56 at 5 n.1). The parties begin their dispute at whether that injury was "caused in whole or in part" by one of the two conditions specified. *See* (Docs. 51 at 6-7,

8

57 at 7). The Court's consideration of the duty to indemnify, unlike the duty to defend, is not limited to the facts alleged, known, or reasonably apparent to the insurer at the outset of the case. *See Piatt*, 461 S.W.3d at 792. Thus, the Court will consider the deposition testimony attached as exhibits to Plaintiff's Statement of Material Facts and Plaintiff's Response to Defendant's Statement of Material Facts, including the depositions of Eric Schoen (Doc. 57, Ex. 1) and Allison Stanley (Doc. 60, Ex. 1).

To begin, the plain meaning of "cause" is "1: to serve as cause or occasion of: bring into existence: MAKE." [2]*Cause*, *Webster's Third New International Dictionary* (2002); *see also Harleysville Ins. Co. v. Physical Distrib. Servs.*, 716 F.3d 451, 460-61 (8th Cir. 2013). "In part" is plainly read as "'in some measure or some degree.'" *Harleysville Ins. Co.*, 716 F.3d at 461 (quoting *Partly*, *Webster's Third New International Dictionary* (1993)). Thus, the alleged bodily injury must have been brought into existence at least "in some measure or degree" by either of the two conditions described in the Policy. *Id.* at 460-61.

The parties first dispute whether the bodily injury at issue was caused in whole or in part by Crossfire's "ongoing operations performed for the insured at the location designated in the written contract . . . ." *See* (Docs. 56 at 7-10, 65 at 8-10). The parties mainly dispute the definition of "ongoing operations" and whether those operations caused the injury. Nevertheless, whatever the definition of "ongoing operations," the Court must read that phrase within the context that the "ongoing operations" are "performed for the insured at the location designated in the written contract . . . ." (Doc. 50, Ex. 4 at 53).

Budrovich argues that, because the parking areas are designated as "common areas" in the Lease, they are a "location designated in the written contract" for purposes of the Policy. (Doc. 51 at 8). This interpretation is incorrect because it lacks context. Even if parking areas are considered "location[s] designated in the written contract" per their status as "common areas" under the Lease, Crossfire performed no "ongoing operations . . . for the insured" in the parking areas.

The Lease designates the areas Crossfire is required to maintain. (Doc. 50, Ex. 1 at 3). Common areas in general, and parking areas in particular, are not so designated. *Id.* The Lease requires Crossfire to contribute money for Budrovich's maintenance of common areas, including parking areas,[2] but it does not require Crossfire itself to actively maintain the parking areas. *Id.* at 1-2. Therefore, the injury simply was not "caused in whole or in part" by Crossfire's "ongoing operations performed for the insured at the location designated in the written contract . . . ." *See* (Doc. 50, Ex. 4 at 53).

The parties next dispute whether the injury was "caused in whole or in part" by "premises owned or used by" Crossfire. There is little argument as to whether Crossfire "owned" the parking area where the injury occurred. The Lease describes the area leased by Crossfire from Budrovich as follows: "(__) [*sic*] square feet of space in the Building consisting of all volleyball courts, one office space located adjacent to the volleyball courts and a storage closet below the office space, all as depicted generally as the cross-

---

[2] Even then, this contribution for parking lot maintenance is limited to "cleaning, resurfacing and striping," all of which are irrelevant to maintaining the chain that allegedly caused the injury in the underlying case. (Doc. 50, Ex. 1 at 2).

10

hatched area shown on Exhibit A (the 'Premises')." (Doc. 50, Ex. 1 at 1). Noticeably absent is any mention of the parking areas, which are instead only mentioned as examples of common areas in another part of the Lease. *See id.* at 2. The Lease does not identify the parking areas as premises "owned" by Crossfire.

More hotly disputed is the issue of whether the injury was "caused in whole or in part" by "premises . . . used by" Crossfire. (Doc. 51 at 7-8); (Doc. 56 at 11-12). The plain meaning of "use" is "2: to put into action or service: have recourse to or enjoyment of: EMPLOY." [2]*Use*, *Webster's Third New International Dictionary* (2002).

The undisputed fact is that the chain that allegedly caused A.N.'s injury is located on the side of the building with the address 9711 Green Industrial Park Drive. (Doc. 57, Ex. 1 at 14).[3] The undisputed facts also show that the indoor portion of 9711 is not leased by Crossfire and is referred to as either the "baseball side" or the "turf side" because it contains fields used by baseball teams. (Doc. 57, Ex. 1 at 2).

---

[3] Budrovich denies Paragraph 30 of West Bend's Statement of Material Facts, which states, "The chain was located on the Baseball Side parking lot. (Ex. A, p. 46:21-25)." (Doc. 66 at 12-13). Budrovich claims that the claim is "not supported by the exhibit cited." *Id.* at 13. Nevertheless, paragraph 30 is directly supported by the cited portion of Schoen's deposition testimony. Schoen stated "Baseball" in response to the question "so the chain that we're looking at here, are you able to identify which parking lot that is in . . . ." (Doc. 57, Ex. 1 at 14). Budrovich also stated without explaining how this contradicts paragraph 30, that the "witness testified that there was a chain going across a ramp used for emergency vehicles," that the "other side of the parking lot had not [*sic*] emergency vehicle ramp," and that "[p]eople were not prohibited from parking on any side of the building." (Doc. 66 at 13). Therefore, this fact is not subject to a genuine dispute. *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment.").

The uncontroverted facts are that Crossfire was allowed to use the parking lot on the baseball side of the building, and it was never prohibited from using the baseball parking lot, but Schoen, the facility manager for Budrovich, actively encouraged Crossfire not to use that side. (Doc. 57, Ex. 1 at 22) ("I've asked [Crossfire] a couple times hey, can you guys try to make sure your people are pa[r]king on your side."). Accordingly, either Budrovich or Crossfire created a map of the facility that Crossfire sent out to teams attending its tournaments instructing people as to which side was "volleyball parking" *Id.* at 11. This is on top of Schoen's repeatedly differentiating the parking lots as either "baseball parking" or "volleyball parking." (Doc. 57, Ex 1 at 10, 11, 13, 14); *see also id.* at 13 (referring to the parking lot on 9719 side of the building as "their [Crossfire's] side of the parking lot").

For these reasons, the Court concludes as a matter of law that West Bend did not have a duty to indemnify Budrovich as to the underlying lawsuit.

## II.     West Bend has No Duty to Defend Budrovich.

West Bend next argues that it does not owe Budrovich a duty to defend it under the Policy. (Doc. 55 at 4). Budrovich counters that West Bend is bound by its Policy to defend Budrovich in the underlying case. (Doc. 51 at 5). A large part of the dispute on this point revolves around the evidence the Court is allowed to consider. *See e.g.*, (Doc. 51 at 5-6); *see also e.g.*, (Doc. 65 at 7). The Court nonetheless holds that West Bend does not have a duty to defend Budrovich regardless of which evidence the Court can consider.

An insurer's "duty to defend is broader than [its] duty to indemnify." *McCrackin*, 701 S.W.3d at 874. It normally "'arises only from potential coverage based on facts: (1)

alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case.'" *Id.* (quoting *Allen*, 436 S.W.3d at 552-53). Of course, this Court already has determined that West Bend does not have the broader duty to defend Budrovich in the underlying case, but will elaborate on the reasons West Bend also does not have a duty to indemnify.

In the underlying case, A.N. and her mother bring claims against only Budrovich, the additional insured; not Crossfire, the insured under the Policy. (Doc. 66, Ex. 5 at 1) ("the Petition"). The Petition alleges that the injury occurred at 9711 Green Park Industrial Drive, the address of Crossfire's Lease. (Doc. 60 at 2); *see also* (Doc. 50, Ex. 1 at 1) (the "Lease"). Because it would be reasonably apparent to West Bend at the outset of the case that this is the address of the premises rented by Crossfire, *see* (Doc. 50, Ex. 4 at 4), the Court's analysis proceeds on that basis.

The Petition alleges no wrongdoing on Crossfire's part. *See generally* (Doc. 66, Ex. 5). The Court is generally skeptical that an additional insured may invoke the duty to defend or indemnify it against a claim brought solely against it, and not against the insured as well. In any event, the Policy here limits the extent to which an additional insured is covered under the Policy. (Doc. 50, Ex. 4 at 53). As already discussed, there are several sets of conditions for the Policy's application to the additional insured.

The first set of conditions is "with respect to liability for 'bodily injury' . . . caused in whole or in part, by: a. your [Crossfire's] ongoing operations performed for the insured at the location designated in the written contract . . . ." (Doc. 50, Ex. 4 at 53). Here, the Petition does not allege that the bodily injury was caused by Crossfire at all, let alone its

13

"ongoing operations." *See generally*, (Doc. 66, Ex. 5). The entire blame for the injury is placed on a chain that A.N. alleges was improperly maintained by Budrovich. (Doc. 66, Ex. 5 at 2).

The second set of conditions is "with respect to liability for 'bodily injury' . . . caused in whole or in part, by: b. premises owned or used by you [Crossfire]." (Doc. 50, Ex. 4 at 53). Again, there is no allegation in the underlying Petition that the premises at issue were owned or used by Crossfire. *See generally*, (Doc. 66, Ex. 5). The Petition alleges that the injury occurred at 9711 Green Park Industrial Drive, which is one of the addresses of the facility Crossfire leased, but the parties do not dispute that the injury occurred on the other side of the building, and West Bend knew that the injury was on the other side of the building as of the time it agreed to defend Budrovich. *See* (Doc. 57 at 8); (Doc. 57, Ex. 1 at 2) (testifying that the chain is located on the baseball side of the parking lot); *see also* (Doc. 66, Ex. 7 at 1-2) ("West Bend's October 18, 2024, Letter") ("Please be advised . . . that the Policy very likely does not provide coverage for Budrovich . . . because the driveway on which this incident occurred was not included in the portion of the property leased to Crossfire Elite"). Additionally, the Petition never alleges that, despite Crossfire's not owning the property, Crossfire used the property. *See generally*, (Doc. 66, Ex. 5).

Moreover, the Policy requires "additional insured coverage" to "not be broader than that which [the insured is] required by the contract or agreement to provide for such additional insured" and "not be broader than coverage provided by the 'underlying insurance'." (Doc. 50, Ex. 4 at 53, 74). The plain meaning of "broad" is "[5]b: widely

14

applicable: not limited or restricted: GENERAL." *Broad*, *Webster's Third New International Dictionary* (2002).[4] The provision of coverage to Budrovich, the additional insured, where there is not even an allegation, let alone evidence, of any negligence by Crossfire, the insured, would render the additional insured coverage more "widely applicable" and less "limited and restricted" than the underlying insurance. (Doc. 50, Ex. 4 at 74).

Further, even if this Court had determined that West Bend had a duty to defend Budrovich at the outset of the underlying case, that duty would no longer apply at this stage. "Under Missouri law, an insurer may undertake the defense of its insured and reserve its right to later disclaim coverage, provided it gives the insured notice of a reservation of rights." *Central Bank v. St. Paul Fire & Marine Ins.*, 929 F.2d 431, 433 (8th Cir. 1991). So long as the insured consents to the insurer's "assumption of the defense under a reservation of rights, the insurer is entitled to bring an action for declaratory judgment as to its obligation in the underlying litigation." *Safeco Ins. Co. of America v. Rogers*, 968 S.W.2d 256, 258 (Mo. Ct. App. 1998) (citing *Central Bank*, 929 F.2d at 433).

Here, Budrovich appears to have agreed to West Bend's assumption of the defense under a reservation of rights. West Bend offered Budrovich a defense in the underlying

---

[4] The Court chooses to use this definition since it was the first relevant definition in this context. *See e.g.*, *Broad*, *Webster's Third New International Dictionary* (2002) ("1 a: marked by ample extent from side to side or by relatively large distance between sides or limits: not narrow"). Additionally, "broader" is defined merely as "*comparative of* BROAD." *Broader*, *Webster's Third New International Dictionary* (2002).

15

case with a reservation of rights stating that "the Policy very likely does not provide coverage for Budrovich as an additional insured because the driveway on which this incident is alleged to have occurred was not included in the portion of the property leased to Crossfire . . . ." (Doc. 66, Ex. 7 at 1-2). As acknowledged by Budrovich in its Statement of Material Facts, West Bend provided a defense to Budrovich from October 2024 to April 2025 after West Bend agreed to provide this defense under a reservation of rights. (Doc. 60 at 5, 7). West Bend sent a letter in April 2025 disclaiming coverage after it determined that, based on facts uncovered in its investigation of the case and pursuant to its reservation of rights, it had no duty to defend Budrovich in the underlying case. (Doc. 50, Ex. 8). Accordingly, West Bend withdrew its defense. (Doc. 66, Ex. 8 at 1). Because Budrovich accepted West Bend's defense with a reservation of rights, West Bend was able to rescind that defense subject to the reservation of rights.

As already determined, the uncontroverted facts establish that West Bend does not have a duty to indemnify Budrovich. Those same facts establish that, even if West Bend previously had a duty to defend Budrovich, that duty to defend no longer exists. *See Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998) (interpreting Missouri law and holding that the district court properly found that the insurer's duty to defend expired upon the court's finding that claims were excluded from coverage).

Finally, Budrovich suggests in its summary judgment motion that Crossfire's indemnification and defense agreement in the Lease requires West Bend to defend and indemnify Budrovich in the underlying suit. (Doc. 55 at 2). While West Bend's Policy

16

makes clear that Crossfire's contractual obligations entail treating Budrovich as an additional insured, the extent to which the Policy covers an additional insured is governed by the terms of the Policy, as discussed at length above. *See* (Doc. 50, Ex. 4 at 53); *see also Piatt*, 461 S.W.3d at 793 ("Ultimately, an insurance policy's language determines coverage.").

The Court concludes, as a matter of law, that West Bend did not have, and does not currently have, a duty to defend Budrovich in the underlying lawsuit.

## CONCLUSION

Defendant Budrovich Indoor Training I, LLC, has not shown that it is entitled to judgment as a matter of law that Plaintiff West Bend Mutual Insurance Company had a duty to indemnify or defend it in the underlying lawsuit. (Doc. 49). Plaintiff West Bend Mutual Insurance Company, on the other hand, has shown that it is entitled to judgment as a matter of law that it had no duty to indemnify or defend Defendant Budrovich Indoor Training I, LLC, in the underlying lawsuit. (Doc. 55).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Budrovich Indoor Training I, LLC's, Motion for Summary Judgment (Doc. 49) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff West Bend Mutual Insurance Company's Motion for Summary Judgment (Doc. 55) is GRANTED.

Dated this 16th day of June, 2026.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE

17